IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISAAC HERRIOTT,

        Plaintiff,

        v.

STEPHEN CRAIG, BEN GREGORY,
MICHAEL WALSH, and the CITY OF
BEND
        Defendants.

Case No. 03-6020-HO

ORDER

Plaintiff originally brought this action against the City of Bend and three of its police officers alleging personal injury, false arrest-imprisonment, malicious prosecution, intentional infliction of emotional distress, and reckless infliction of emotional distress. Defendants moved to dismiss contending that plaintiff's claims were governed by the Oregon Tort Claims Act and that plaintiff had failed to plead the required notice to defendants. The court granted the motion to dismiss, but allowed

plaintiff to amend his complaint to allege claims pursuant to section 1983 for violation of his Fourth Amendment rights resulting from an arrest on January 31, 2001, in which he alleges he was thrown to the sidewalk. Plaintiff now alleges he was subject to excessive force in violation of the Eighth and Fourth Amendments.

Specifically, plaintiff alleges that Bend police responded to reports of an intoxicated bar patron who had ingested quaaludes. When the police arrived to find plaintiff peacefully walking out of the building, defendants Stephen Craig, Ben Gregory, and Michael Walsh grabbed plaintiff using arm bars and took him to the ground where plaintiff hit his face. Plaintiff was then handcuffed and placed in a patrol car. Plaintiff also alleges that the officers did not have probable cause to arrest him and "no legal cause or excuse to seize the person of Isaac Herriott."

Plaintiff further alleges that he suffered bodily injuries and damage as a result of unreasonable search and seizure, infliction of cruel and unusual punishment, and loss pf physical liberty. Plaintiff alleges physical pain, inconvenience, humiliation, loss of reputation, emotional trauma, and distress.

Plaintiff alleges claims against the individual officers involved and the City of Bend for violation of his constitutional rights.

Defendants move for summary judgment contending that the officers lawfully arrested plaintiff, the officers are entitled to

qualified immunity, the use of force was lawful, and that the officers were adequately trained and supervised.

I. Background

Viewed in a light most favorable to plaintiff, the events leading up to and during the arrest are as follows:

On January 31, 2004, plaintiff shot pool with Clint Johnson at the Timbers East Tavern in Bend, Oregon. Plaintiff and Johnson visited the restroom where Johnson had a conversation with A.J. Root. Root informed Johnson that he had a headache. Johnson gave root some small white pills stating they would take his headache away. Root swallowed a number of the pills and he, plaintiff, and Johnson then left the restroom.

Johnson informed Root's girlfriend, Susan Hogan, that he had given Quaaludes to Root.[1] Hogan then informed Root who soon collapsed and stopped breathing. A D.J. came to assist and poked his finger down Root's throat causing him to regurgitate. Root then began to experience wildly fluctuating mood swings from docile to rage.

During a period of rage, Root rushed at Johnson and plaintiff yelling and swinging. Paramedics were then called to the scene.

City of Bend Police officers Stephen Craig, Ben Gregory, Robert Maddox, and Michael Walsh responded to a dispatch call

---

[1]Johnson and plaintiff had apparently taken quaaludes as well.

3 - ORDER

regarding an intoxicated person who was out of control at the Timbers Tavern and had ingested quaaludes.  Gregory arrived first and Erin Bryan, a friend of Root's, informed Gregory that Root had taken quaaludes and was unconscious.  Bryan also informed Gregory that Johnson and "a friend of his" had given the quaaludes to Root.  Officer Maddox then went to contact Johnson.

At the time of the Officers' arrival, Root was attempting to fight with others and patrons were coming and going from the tavern.  Sergeant Gregory entered the tavern and saw five people trying to restrain Root who was disoriented and swinging wildly.  Gregory handcuffed Root with Root's permission.  Hogan told Gregory that as far as she knew, Johnson had given Root the quaaludes and that plaintiff was with Johnson and that both plaintiff and Johnson were on quaaludes.

Officer Craig spoke with several people in the area and a black adult male informed Craig that "a short white guy with a gray long sleeve shirt that [had] blue down the sleeves" had given quaaludes to Root.  Several people nearby agreed with this statement.

Craig walked toward the front door of the tavern and plaintiff, who matched the above description, walked out.  At that time, a female in the crowd stated "that's him."  Hogan also pointed toward plaintiff and said "that's him."

Officer Craig made contact with plaintiff and told him to stop. Plaintiff moved away from Craig and Craig reached for plaintiff explaining that he was a police officer. Craig twice told plaintiff to put his hands behind his back, but plaintiff pulled away. Craig then threw his left arm over plaintiff's shoulder and pulled him back. Officer Walsh approached while plaintiff pulled away again. Craig and Walsh then applied an arm-bar technique to take plaintiff down twisting plaintiff's wrists to apply pressure to the triceps area allowing the officers to bend plaintiff over and force him straight down. Plaintiff's face hit the ground causing a small "goose-egg" above his right eye.

The officers handcuffed and escorted plaintiff to a patrol vehicle. Craig arrested plaintiff for interfering with a police officer and disorderly conduct and then transported him to his residence and released him.

## II. Eighth Amendment Claim

It is not clear why plaintiff has alleged a claim under the Eighth Amendment and he does not specifically address it in his memorandum in response to the motion. Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. See United States v. Lovett, 328 U.S. 303, 317-318(1946). The State does not acquire the power to punish with

which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment. See Ingrham v. Wright, 430 U.S. 651, 671, n. 40 (1977). Plaintiff only alleges constitutional violations associated with his arrest and not for any post-adjudication punishment. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's Eighth Amendment Claim.

## III. Fourteenth Amendment Claims

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. Graham v. Conner, 490 U.S. 386, 395 (1989). Accordingly, to the extent plaintiff alleges a claim under the Fourteenth Amendment, defendants are entitled to summary judgment.

6 - ORDER

IV. Fourth Amendment Claim

Plaintiff does not discuss the amount of force used with respect to his arrest in his memo, rather plaintiff argues that the arresting officers did not have a probable cause or even a reasonable suspicion to stop him in the first place and that therefore any use of force was clearly excessive. To the extent the officers had probable cause to arrest or even a reasonable suspicion to stop plaintiff, the amount of force used was no more than necessary. Accordingly, the issue is whether the defendants validly stopped plaintiff and detained him. Defendants contend that at a minimum, they are entitled to qualified immunity with respect to the Fourth Amendment claim.

The qualified immunity defense is available to government officials being sued for alleged constitutional violations, and it bestows "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Determining whether an official is entitled to qualified immunity involves a two step analysis.

First, the court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Katz, 533 U.S. at 201. If so, the court's next step is to determine whether the right is clearly established in light of the

7 - ORDER

specific context of the case, and not as a general proposition. Id. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. The requirement that the right must be clearly established serves the goal of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Katz, 533 U.S. at 202. Because qualified immunity "is an immunity from suit rather than a mere defense to liability," the court should decide the issue "at the earliest possible stage in litigation." Hunter, 502 US at 227. The Fourth Amendment prohibition on the use of excessive force in the course of an arrest is a clearly established right, Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989), as is the right to be free from search and seizure absent probable cause or the right to be free from being stopped by a law enforcement officer absent a reasonable suspicion.

There is no dispute in this case that possession of quaaludes and delivery of quaaludes is a crime in Oregon. See ORS § 475.992,

21 C.F.R. § 1308.11.[2] Even construing the facts in a light most favorable to plaintiff and making all inferences in plaintiff's favor, the officer's could have reasonably concluded that plaintiff had engaged in these crimes.

The government has the authority to detain an individual or his possessions for purposes of furthering a valid investigation, the scope of which is circumscribed by the officer's reasonable and articulable suspicion. Terry v. Ohio, 392 U.S. 1, 21 (1968); United States v. Place, 462 U.S. 696, 706 (1983). Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaging in or about to engage in a crime under a totality of the circumstances. United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). Further, although an officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, those inferences must also be grounded in objective facts and be capable of rational explanation. Id. "If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony then a Terry stop may be made to

---

[2]In addition, the information that plaintiff had provided quaaludes to Root which in turn led to a situation where Root engaged in violent behavior, also provided police with the objective belief that plaintiff had committed the crime of disorderly conduct. See ORS § 166.025

investigate that suspicion." United States v. Hensley, 469 U.S. 221, 229 (1985).

The stop in this case escalated to an arrest, requiring probable cause. Nonetheless, construing the facts in plaintiff's favor where possible, a reasonable officer could have believed probable cause existed that plaintiff had committed the crimes of possession and delivery of quaaludes and disorderly conduct.

Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures. Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992). Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime. Mackinney v. Nielsen, 69 F.3d 1002, 1005 (9th Cir. 1995). The question here is whether the officers actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation. Caballero, 956 F.2d at 206. Evil intentions will not make a Fourth Amendment violation out of an objectively reasonable arrest. By the same token, good intentions will not make an objectively unreasonable arrest constitutional. Id.

In this case, it is undisputed that several persons physically present at the scene, identified plaintiff as the person who gave

Root the drugs. Not only did the African American male provide an accurate description of plaintiff as the person who provided the drugs, but Hogan and Bryan specifically identified him in addition to several others at the scene. Plaintiff argues that the officers had nothing more than an uncorroborated anonymous tip, but the officers had identifications from several people made face to face with the officers both identified and unidentified in police reports.

As noted above, plaintiff does not discuss whether the amount force used was excessive, assuming probable cause existed. An inquiry into the merits of an excessive force claim is the same as the inquiry as to whether an officer is entitled to qualified immunity.

Thus, this court must determine whether defendants' actions were reasonable under the circumstances. Graham, 490 U.S. at 397. The "reasonableness" of defendants' actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and allow "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving-- about the amount of force necessary in a particular situation." Id. at 396. Among the factors to consider are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." Id. In other words, the question is whether the totality of the circumstances justifies a particular action. Officers need not use the least intrusive degree of force possible, so long as the force used is reasonable. See Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1992).

Police officers are entitled to use reasonable methods to protect themselves and others in potentially dangerous situations. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). While the question of the reasonableness of force is usually a question of fact for the jury, the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to plaintiffs, the evidence compels the conclusion that the officers use of force was reasonable. Hopkins, 958 F.2d at 885 (9th Cir. 1992).

Defendants present evidence that the arm-bar technique is routine and reasonable and plaintiff does not present contrary evidence. The minor bruising caused plaintiff does not demonstrate an unreasonable amount of force given that plaintiff did not obey the officers lawful command to stop and indeed he actively resisted their attempts to stop him. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's Fourth Amendment claim.

V. Claims Against the City

During oral argument, plaintiff moved to dismiss the claims against the City of Bend and the court granted that motion. Accordingly, defendants' motion for summary judgment with respect to plaintiff's claim against it are denied as moot.

CONCLUSION

For the reasons stated, defendants' motion for summary judgment (#66) is granted, as noted above, and this action is dismissed.

DATED this 6th day of July, 2005.

Michael R. Hogan
United States District Judge